IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL T. MASSARO,  :  Plaintiff, : : v. : : WELLS FARGO HOME MORTGAGE : Defendant. : : | CIVIL ACTION  NO.: 16-4899 |

**Jones, II    J.**                                                                                                      **August 24, 2018**

## MEMORANDUM

Plaintiff Michael Massaro alleges that his employer, Defendant Wells Fargo Home Mortgage, unlawfully targeted Plaintiff for termination because of Plaintiff's race and sex. Following an insider tip that Wells Fargo employees were committing statutory and policy violations in the course of their employment, Defendant instituted a wide-scale, several-month long internal investigation that culminated in the formal discipline of several dozen employees. Defendant's investigation produced evidence that, in his capacity as a Home Mortgage Consultant, Plaintiff engaged in behavior that violated both company policy and federal statutory mandates. Following an investigative interview and presentation of evidence to Defendant's Business Conduct Review Committee, Defendant decided to recommend Plaintiff for termination. Plaintiff maintains that Plaintiff's race and sex influenced Defendant's decision, and claims that women and minorities were protected from termination by Defendant's Affirmative Action and diversity policies. Defendant timely moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), and for the reasons that follow, the Court finds that the undisputed material facts demonstrate that Defendant is entitled to judgment as a matter of law. Defendant's Motion is granted.

## Factual Background

The following facts are not in dispute. In October 2011, Defendant hired Plaintiff Michael Massaro to work as a Home Mortgage Consultant (hereinafter "HMC") in Defendant's West Chester location. (ECF No. 32-2, ¶¶ 1-2; ECF No. 37, ¶¶ 1-2.) HMCs working for Defendant were primarily

1

responsible for originating the mortgages of Defendant's clients. (ECF No. 32-2, ¶ 4; ECF No. 37, ¶ 4.) HMCs were expected to know and follow all federal statutes and regulations pertinent to the execution of HMCs' professional duties, including the Real Estate Settlement Procedures Act (hereinafter "RESPA"). (ECF No. 32-2, ¶¶ 5, 8-9; ECF No. 37, ¶¶ 5, 8-9.) RESPA prohibits, *inter alia*, the receipt or transfer of a "fee, kickback, or thing of value" in exchange for business referrals related to real-estate settlement services. (ECF No. 32-2, ¶ 11; ECF No. 37, ¶ 11.) A HMC's violation of RESPA would constitute a violation of both federal statutory law and Defendant's company policy. (ECF No. 32-2, ¶ 10; ECF NO. 37, ¶ 10.)

About three years into Plaintiff's tenure as an HMC, Defendant was informed that a title insurance agency, Patriot Land Transfer (hereinafter "Patriot Title"), was providing Defendant's HMCs with lists of consumers likely to require mortgage origination services in exchange for business referrals. (ECF No. 32-2, ¶ 12; ECF No. 37, ¶ 12.) It was a violation of RESPA to accept these "lead lists" under the express or implied expectation that, in exchange, the recipient HMC would refer loans to Patriot Title for closing. (ECF No. 32-2, ¶ 15; ECF No. 37, ¶ 15.) After receiving word of the alleged arrangement between Patriot Title and Wells Fargo HMCs, Defendant conducted an internal investigation into its employees' contact with Patriot title. (ECF No. 32-2, ¶ 16; ECF No. 37, ¶ 16.)

Defendant's Employee Relations and Internal Investigations departments oversaw the investigation, which spanned six months and involved interviews of a few dozen HMCs and management level Wells Fargo employees. (ECF No. 32-2, ¶¶ 17-19; ECF No. 37, ¶¶ 17-19.) As part of the investigation, Defendant's Data and Analytics Department created a Utilization Report that detailed HMCs' use of Patriot Title to close clients' loans. (ECF No. 32-2, ¶¶ 21-22; ECF No. 37, ¶¶ 21-22.) The Utilization Report included HMCs' names and employee numbers, the date on which each loan closed with Patriot Title was funded, and the purpose of each loan. (ECF No. 32-2, ¶ 23; ECF No. 37, ¶ 23.) The Utilization Report did not categorize the subject HMCs by race or sex. (ECF No. 32-13.)

At some point in the investigative process, Defendant also ordered the review of employees'

emails. (ECF No. 32-2, ¶¶ 25; ECF No. 37, ¶ 25.) Defendant's investigators searched HMCs' emails for (1) communications between the HMCs and Patriot Title personnel, and (2) evidence of unlawful receipt of lead lists. (ECF No. 32-2, ¶ 26; ECF No. 37, ¶ 26.) After review of the Utilization Report and HMCs' emails, Defendant's investigators were charged with interviewing HMCs about their respective relationships with Patriot Title. (ECF No. 32-2, ¶ 28; ECF No. 37, ¶ 38.) Plaintiff was one of thirty-one HMCs Defendant deemed it necessary to interview. (ECF No. 32-24; ECF No. 32-2, ¶ 31; ECF No. 37, ¶ 31.) Defendant's investigators asked each HMC the same standard interview questions and the HMCs' responses to each were noted. (ECF No. 32-2, ¶ 32; ECF No. 37, ¶ 32.) At the conclusion of Plaintiff's interview, Defendant's investigators determined that Plaintiff violated Defendant's policies and that Plaintiff's violations may have regulatory implications under RESPA. (ECF No. 32-2, ¶ 35; ECF No. 37, ¶ 35.) As with the other HMCs interviewed, the investigators presented their determination of Plaintiff's culpability to Defendant's Business Conduct Review Committee (hereinafter "Committee"), which was responsible for reviewing the investigator's findings and recommending a course of action based thereupon. (ECF No. 32-2, ¶¶ 36-37; ECF No. 37; ¶¶ 36-37.) The Committee recommended that Plaintiff be terminated. (ECF No. 32-2, ¶ 38; ECF No. 37; ¶ 38.) Defendant's then National Sales Manager approved the Committee's recommendation, finalizing the decision to terminate Plaintiff. (ECF No. 32-2, ¶ 40; ECF No. 37, ¶ 40.) In the face of impending termination, Plaintiff resigned. (ECF No. 32-2, ¶ 43; ECF No. 37, ¶ 43.) Upon his resignation, Defendant deemed Plaintiff ineligible for rehire. (ECF No. 32-2, ¶ 49; ECF No. 37, ¶ 49.) Plaintiff contested Defendant's decision, to no avail. (ECF No. 37, ¶ 84; ECF No. 38, ¶ 84.)

By the end of Defendant's investigation, upwards of a dozen HMCs were recommended for termination – including three female HMCs – and over a dozen more HMCs were recommended for other forms of formal discipline. (ECF No 37-4; ECF No. 32-2, ¶ 55; ECF No. 37, ¶ 55.)

Based on the foregoing, Plaintiff filed suit alleging violations of 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964 ("Title VII").

## Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." Halsey v. Pfeiffer, 750 F.3d 273 (3d Cir. 2014) (quoting Petruzzi's IGA Supermarkets v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993)).

## Discussion

The Court finds no genuine issues of material fact. As such, the relevant inquiry is whether Defendant is entitled to judgment as a matter of law on Plaintiff's Title VII and Section 1981 claims for intentional discrimination on the basis of sex and race. The Court assesses the sufficiency of the evidence in support of Plaintiff's two causes of action together, as Section 1981 claims track Title VII claims of the same nature for the purposes of summary judgment. Jones v. Sch. Dist. Of Phila., 198

F.3d 403, 409 (3d Cir. 1999). In both instances, in the absence of direct evidence, a plaintiff may establish his race or sex based discrimination claim through the burden shifting framework delineated in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973); Jones, 198 F. 3d at 410 (using the McDonnell Douglas framework to assess Section 1981 claims of intentional discrimination).

Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie showing of discrimination. McDonnell Douglas 411 U.S. at 802. Once the plaintiff successfully puts forth a prima facie case of discrimination, the burden shifts to the defendant-employer to "articulate some legitimate, non-discriminatory reason" for the adverse employment action taken. Fekade v. Lincoln Univ., 167 F.Supp. 2d 731, 741 (E.D. Pa. 2001). Once the defendant presents a legitimate, lawful reason for its employment action, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason for its employment decision was pretext for unlawful discrimination. Id. Pretext is established by evidence that would lead a reasonable fact finder either to disbelieve the defendant's articulated reason for the employment action taken, or believe that invidious discrimination was more likely the basis. Jones, 198 F. 3d at 413. For the brief reasons that follow, the Court finds that Plaintiff's claims necessarily fail, and Defendant is entitled to judgment as a matter of law.

I. **Plaintiff Fails to Establish a Prima Facie Case of Race or Sex Based Discrimination.**

If Plaintiff cannot establish a prima facie case of intentional discrimination, his claim necessarily fails. See Sarullo v. United States Postal Serv., 352 F.3d 789, 799 (3d Cir. 2003) (finding the plaintiff's claim was "meritless" because the plaintiff failed to establish a prima facie case of discrimination). A plaintiff makes a prima facie showing of intentional discrimination where he demonstrates: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for a position or was performing said position satisfactorily; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. Fekade v. Lincoln Univ., 167 F.Supp. 2d 731, 742

5

(E.D. Pa. 2001). "The prima facie case serves an important function in claims of unlawful employment discrimination, [as] 'it eliminates the most common, nondiscriminatory reasons for the plaintiff's termination.'" Roscoe v. Watco Cos., LLC, Civ. No. 15-2118, 2016 U.S. Dist. LEXIS 175588, at *20-21 (E.D. Pa. Dec.16, 2016) (citing Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 253-254 (1981)). Plaintiff's claims cannot withstand summary judgment because the record is bereft of facts from which the Court could infer that discrimination, and not common, lawful employment considerations, served as the basis for Plaintiff's discharge.

It is indisputable that White men accounted for a disproportionate amount of the HMCs recommended for termination at the conclusion of Defendant's Patriot Title investigation. According to Defendant's own exhibit, of the thirty-one HMCs interviewed throughout Defendant's Patriot Title investigation twenty were White and male – about 64.5%. (ECF No. 32-24.) Despite this, thirteen of the sixteen HMCs recommended for termination were White men – about 81.25%. (ECF No. 37-4.) The Court acknowledges this disparity but finds that the disparity alone is insufficient to satisfy the fourth prong of Plaintiff's prima facie case. Summy –Long v. Pa. State Univ., 226 F. Supp. 3d 371, 396 (M.D. Pa. 2016) ("[T]he Third Circuit has previously instructed…district courts to treat statistical evidence with caution in disparate treatment cases. Indeed…the Third Circuit has even noted the relative unimportance of statistical evidence in an individual treatment case.") (internal citations omitted). There is no indication that the Utilization Report, Fact Finding Summaries, or other documents used in the course of Defendant's investigation categorized the employees interviewed by race or sex. There is no evidence of racially or sexually invidious comments by personnel with the authority to recommend termination. And from the evidence of record, it's clear that at least four HMCs of Plaintiff's same sex and race were not recommended for termination – with one White, male HMC not recommended for any disciplinary action at all.

Generally, comparator evidence would be useful to create an inference of unlawful discrimination, as, ultimately, "[t]he central focus of the inquiry in a case such as this is always

whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999). (citing Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978)). But to be true comparators, Plaintiff and the identified person(s) must be "similar in all relevant respects." Opstanik v. Norfolk S. Corp., 335 F.Appx. 220, 223 (3d Cir. 2009). The "relevant respects" "are determined by the context of each case," but generally, plaintiff would need to "show[] that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id. (internal citations omitted).

Plaintiff's attempts at cherry-picking comparator evidence are misplaced and unavailing. Despite Plaintiff's arguments to the contrary, neither Joanne Stec, Employee "B," Employee "M," nor Employee "T" are viable comparators. With respect to Stec – a White woman not recommended for termination – Defendant's investigation produced no evidence of Stec receiving lead lists or closing loans with Patriot Title during her tenure with Defendant. (ECF No. 37-4, pp. 61-62.) Employee "B" – a Black man not recommended for termination – reportedly closed no loans with Patriot Title during his tenure as an HMC and had not, based on the evidence of record, received lead lists from any title company for several years leading up to the subject investigation. (ECF No. 37-4, pp. 6-7.) Employee "M" – a white woman not recommended for termination – was also found to have never closed any loans with Patriot Title. (ECF No. 37-4, pp. 32-33.) And for Employee "T" – a Hispanic woman not recommended for termination – the investigation did not bear evidence sufficient to establish a violation of policy or statute, and the only loan referred to Patriot Title was a bank generated lead. (ECF No. 37-4, p. 49.) As compared to all these alleged "comparators", evidence of record confirms Plaintiff received lead lists for a Patriot Title representative and closed thirty-seven loans with Patriot Title during his time with Defendant as an HMC. (ECF No. 37-4, p. 26.)

Absent true comparators proven to have experienced more favorable treatment by Defendant,

or any other indicia of discriminatory animus, Plaintiff cannot demonstrate that the circumstances surrounding Plaintiff's discharge from Defendant's employment give rise to an inference of discrimination. After thorough review of all Motion filings and exhibits, the Court finds that Plaintiff fails to establish a prima facie case of disparate treatment on the basis of race or sex under either Title VII or Section 1981. Defendant is entitled to judgment as a matter of law.

II. **Plaintiff Cannot Disprove Defendant's Legitimate, Nondiscriminatory Reason for Plaintiff's Recommended Discharge.**

Even if the purported comparator evidence and numerical disparity between the proportion of HMCs interviewed that were White and male and the proportion of HMC's recommended for termination that were White and male sufficed to establish a prima facie case of discrimination, the foregoing would be insufficient to establish pretext.

Defendant can more than satisfy its burden to articulate a legitimate, nondiscriminatory basis for its decision to recommend Plaintiff's termination. Defendant's investigative body reviewed evidence that Plaintiff was repeatedly contacted by a Patriot Title employee, received lead lists from Patriot Title, and closed over three dozen loans with Patriot Title. (ECF No. 37-4, p. 26.) And Defendant maintains that its decision to terminate Plaintiff was based upon the foregoing, lawful reasons. Having articulated a nondiscriminatory basis for its employment decision, the burden shifts back to the Plaintiff to show pretext. Fekade, 167 F. Supp. 2d at 741. The Court finds that Plaintiff is unable to put forth proofs from which a fact finder could reasonably disbelieve Defendant's stated bases for its decision to recommended termination or believe unlawful animus was the more likely basis.

For all of the reasons previously addressed, the "comparators" Plaintiff identifies are not actually comparators at all. The Court cannot infer racial or sexual animus from the employees' more favorable employment outcomes because the employees' conduct was not sufficiently similar to that of Plaintiff. And that the alleged comparators had past corrective action in their respective files, were

found to be incredible, or were otherwise better suited for termination in Plaintiff's assessment is wholly irrelevant. It is not for this Court – or Plaintiff – to "subjectively weigh factors it considers important" when assessing the legitimacy of Defendant's stated criterion for its employment decision. Simpson v. Kay Jewelers, 142 F.3d 639, 647 (3d Cir. 1998) (considering the plaintiff's purported evidence of pretext and discounting the plaintiff's subjective assessments of what factors the defendant should have factored into its employment decision instead of the defendant's stated criterion). Rather, "the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." Id. Defendant's proffered basis for its decision to recommend Plaintiff for termination was Plaintiff's commission of RESPA violations during his time as an HMC, with specific reference to Plaintiff's receipt of lead lists from Patriot Title and the relatively high number of loans closed therewith. (ECF No. 32-1, pp. 20-22.) The stated criterion did not apply to Stec, Employee "B," Employee "M," or Employee "T," so Defendant's employment decisions regarding these purported comparators cannot be evidence of pretext.

## **CONCLUSION**

Defendant is entitled to judgment as a matter of law. Plaintiff cannot establish that the circumstances surrounding his discharge from Defendant's employment give rise to an inference of unlawful discrimination. As such, Plaintiff cannot make a prima facie showing of intentional discrimination either on the basis of race or on the basis of sex. The Court could stop its inquiry there, as a failure to make a prima facie showing of discrimination is fatal to both of Plaintiff's claims. But even if the Court were to find the evidence of record was sufficient to satisfy the first of Plaintiff's burdens under the McDonnell Douglas framework, the Court finds that Plaintiff would be unable to overcome Defendant's proffered nondiscriminatory reason for its employment action and prove pretext. Because Plaintiff cannot make a prima facie showing of either race or sex based discrimination, and because Plaintiff cannot reasonably cast doubt on Defendant's articulated,

nondiscriminatory reason for Plaintiff's discharge, Plaintiff's claims fail as a matter of law. Defendant's Motion is granted.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II    J.